```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                      NORTHERN DIVISION

UNITED STATES                                        PLAINTIFF

VS.                         CRIMINAL ACTION NO: 5:08-cr-20-DCB-LRA
                            CIVIL ACTION NO: 3:13-cv-823-DCB

CHARLES W. GAVIN                                     DEFENDANT
```

### MEMORANDUM OPINION AND ORDER

This cause is before the Court on Motion of the Defendant, Charles W. Gavin, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody **[docket entry no. 221]** pursuant to 28 U.S.C. § 2255. Having carefully considered said Motion, the Government's opposition thereto, applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

### Facts and Procedural History

Gavin was charged in a single count indictment with conspiracy to commit murder for hire in violation of 18 U.S.C. § 1958. Following a jury trial, Gavin was convicted on April 28, 2009. Gavin appealed his conviction to the Fifth Circuit, and the Fifth Circuit affirmed his conviction on January 25, 2011. Gavin made no further direct appeals. He filed this motion on April 19, 2012.

Gavin argues that his attorney, John M. Colette, provided ineffective assistance of counsel, alleging six instances, which

1

the Government summarized as:

> (1) failure to interview the other co-defendants;
> (2) preventing the defendant from testifying;
> (3) failure to request a continuance;
> (4) failure to object at trial and to appeal the alleged late disclosure of Brady;[1]
> (5) failure to challenge defendant's career offender status; [and]
> (6) failure to challenge a sentencing enhancement.

Resp. p. 2, ECF No. 228.

## Analysis

To prevail on an ineffective assistance of counsel claim, "[f]irst, the defendant must show that counsel's performance was deficient[;] . . . [s]econd the defendant must show that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). A court may examine performance or prejudice in any order and need not examine both prongs if a defendant fails to demonstrate either. Id., at 697. An attorney's performance is judged on a standard of reasonably effective assistance. Id., at 687 The deficient performance must be so egregious as to render it less than that guaranteed by the Sixth Amendment. "[S]crutiny of counsel's performance must be 'highly deferential,' and, in order to avoid the effects of hindsight bias, [the Court] 'must indulge a strong presumption that counsel's conduct falls within the range of reasonable professional

---

[1] The Government refers potential exculpatory information that must be disclosed to a criminal defendant by the prosecution from Brady v. Maryland, 373 U.S. 83 (1963).

assistance . . . .'" Higgins v. Cain, 720 F.3d 255, 265 (5th Cir. 2013) (quoting Strickland, 466 U.S. at 689). "Prejudice means that 'counsel's errors were so serious as to deprive the defendant of a fair trial. . . ." United States v. Painter, 243 F. App'x 818, 821 (5th Cir. 2007) (quoting Strickland, 466 U.S. at 687). Prejudice requires a reasonable probability that, but for counsel's deficient performance, the result would have been different. Strickland, 466 U.S. at 694.

    1. Failure to Interview Other Co-Defendants

 In his first claim, Gavin argues that Attorney Colette provided ineffective assistance of counsel by failing to interview the other co-defendants. Pl.'s Mem. Supp. p. 5, ECF No. 222. According to Gavin, these interviews would have produced exculpatory evidence that no conspiracy existed. However, Mr. Colette states in his affidavit that he did interview the attorneys for these defendants in numerous discussions and meetings. He further states that none of the co-defendants had any exculpatory information or new and relevant evidence. Aff. John M. Colette ¶ 1, ECF No. 227.

 "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. An attorney must "at a minimum interview potential witnesses and make an independent investigation of the facts and circumstances in the case." Bryant

v. Scott, 28 F.3d 1411, 1415 (5th Cir. 1994) (quoting Nealy v. Cabana, 764 F.2d 1173, 1177 (5th Cir. 1985)) (internal quotations omitted). However, Strickland does not require the interview of every potential witness. The "results of interviewing certain witnesses or *other investigation* may indicate that further pursuit of additional asserted witnesses will likely be a waste of time." Bryant, 28 F.3d at 1419 n.13 (emphasis added). The Court finds that "other investigation" includes discussion with counsel for a criminal co-defendant. Further, Colette advised Gavin to hire a private investigator to interview his co-defendants who were incarcerated.[2] Pl.'s Mem. Supp. p. 6, ECF No. 222. It cannot be said that Colette performed "essentially no pre-trial investigation" in support of a finding of deficient performance in Bryant. See 28 F.3d at 1419 n.13. While Colette's personal interviews with the co-defendants may have produced a more complete investigation, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 690-91. Colette used reasonable professional judgment in deciding not to interview the

---

[2] Gavin did hire the private investigator at Colette's suggestion. In his Memorandum of Support, Gavin claims that the private investigator was unable to interview any of the potential witnesses. Pl.'s Mem. Supp. p. 6, ECF No. 222. But in his Reply, Gavin claims that the private investigator was able to interview one of the potential witnesses, but that interview was cut short. Reply p. 7, ECF No. 240.

4

...

co-defendants personally; therefore, Gavin's first claim lacks merit.

### 2. Preventing Gavin from Testifying

In his second claim, Gavin argues that Colette provided ineffective assistance of counsel by preventing Gavin from testifying on his own behalf. Pl.'s Mem. Supp. p. 10-11, ECF No. 222. According to Gavin, Colette prepared Gavin to testify because Gavin "was the only witness that could get his version of the events before the jury. . . ." Pl.'s Mem. Supp. p. 9. Colette counters that he did not prohibit Gavin from testifying and informed him that it was Gavin's decision to testify or not to do so. Aff. John M. Colette ¶2, ECF No. 227. The Government argues this claim is not supported by the record. Resp. p. 3, ECF No. 228.

"The decision of whether to testify belongs to the defendant and his lawyer cannot waive it over his objection." United States v. Mullins, 315 F.3d 449, 454 (5th Cir. 2002). Based on the facts now in the record, the Court cannot make a finding as to deficient performance one way or the other. However, even assuming arguendo that Colette's performance was in fact constitutionally deficient, the Court holds that not calling Gavin did not prejudice his defense, failing the second prong of the Strickland analysis.[3]

---

[3] The Government mischaracterizes Mullins when it states that when defense counsel informs a defendant of the right to testify and then decides not to call the defendant, "the inquiry is whether or not the decision was sound trial strategy." Resp. p. 3. The Mullins court clearly stated that "it cannot be

>Gavin asserts that he wanted to testify for several reasons:
>
>First, [Gavin] wanted to explain that he did not know [co-defendant Charles] McCullough, even if they were incarcerated at the same facility . . . [Gavin] wanted to testify to explain how [cooperating witness Cooper][4] knew about [the intended victims. And] . . . [Gavin] wanted to testify to explain how Cooper obtained his bank account numbers.

Pl.'s Mem. Supp. p. 10, ECF No. 222. The Government argues that, even with this testimony, the result would have been the same because such evidence would not overcome the Government's "fingerprint and hand writing [evidence] linking the defendant to the crime, as well as jail audio recordings of the defendant." Resp. p. 4, ECF No. 228. Further, the Government believes Gavin's testimony would not have been perceived as credible by the jury.

Having reviewed the record, the Court finds that Gavin failed to prove a reasonable probability that the outcome of his trial would have been different. See Bonvillain v. Blackburn, 780 F.2d 1248, 1253 (5th Cir. 1986) ("[T]he defendant may not simply allege but must 'affirmatively prove' prejudice."). "A reasonable

---

considered within the scope of sound trial strategy to not leave the ultimate decision to the client. . . ." Mullins, 315 F.3d at 456. Therefore, the inquiry remains the Strickland prejudice analysis, where the Court either finds or does not rule on deficient performance and the defendant alleges that he was prevented from testifying against his wishes.

[4] To ensure his safety and protect his identity, the Court has changed the name of the Government's cooperating witness to "Cooper" in accordance with the suggestion of the Court Administration and Case Management, Defender Services, and Criminal Law Committees.

probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. The Supreme Court has since elaborated that prejudice means "[t]he likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 792 (2011); Vasquez v. Thaler, 505 F. App'x 319, 325 (5th Cir. 2013) (quoting Richter). Here, Gavin's proposed testimony, when it is compared to the other evidence submitted at trial, does not portend a different result; it does not substantially show the likelihood of a different outcome. Further, the absence of this evidence from the trial did not cause the proceeding to be fundamentally unfair. Therefore, the Court finds this claim is without merit.

3. Failure to Request a Continuance

In his third claim, Gavin argues that Colette provided ineffective assistance of counsel by failing to request a continuance during trial when the identities of two new potential exculpatory witnesses became known. Pl.'s Mem. Supp. p. 11, ECF No. 222. The Court interprets this as a claim that Colette should have called the witnesses at trial, but it will also examine the decision not to request a continuance in its analysis. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (stating that pro se pleadings are to be liberally construed). It appears from his affidavit that Colette chose not to request a continuance because he found that the witnesses did not have any exculpatory evidence and what

impeachment evidence they had would be cumulative or irrelevant. Aff. John M. Colette ¶ 3, ECF No. 227. The Government argues that the decision whether to call a witness rests squarely within the professional discretion of the defense attorney. Resp. p. 5, ECF No. 228 (citing United States v. Best, 219 F.3d 192, 201 (2nd Cir. 2000)).

In the Fifth Circuit, to prevail on a claim based on the failure to call a witness, the defendant must:

> (1) Name the witness
> (2) Demonstrate that the witness was available to testify and would have done so
> (3) Set out the content of the witness's proposed testimony, and
> (4) Show that the testimony would have been favorable to a particular defense.

Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009). The Fifth Circuit "has repeatedly held that complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." Id.

As to the first requirement, Gavin names the two witnesses as Samuel Boswell and Charles Webb. Pl.'s Mem. Supp. p. 11, ECF No. 222. Boswell and Webb were incarcerated at the time of trial.

As to the second requirement, Gavin has not produced satisfactory evidence that these witnesses would have been available to testify. First, Gavin has not produced affidavits

signed by the potential witnesses attesting to their willingness to testify. See Adams v. Quarterman, 324 F. App'x 340, 350 (5th Cir. 2009); see also Slade v. Bingham, No. 2:11cv99, 2014 WL 1050340, at *14-15 (S.D. Miss. Mar. 14, 2014) (applying Adams to the test found in Day).

Second, it is unlikely that Gavin could have produced the witnesses at trial, even if they were willing. Because their identities did not become known to the defense until the trial had already begun, their presence would require a continuance from the court. In order to continue a trial to produce a witness through a writ ad testificandum, the defendant must "demonstrate the necessity of the witness's testimony." United States v. Redd, 355 F.3d 866, 878 (5th Cir. 2003) (quoting United States v. Gonzalez, 79 F.3d 413, 424 (5th Cir. 1996)). And "the defendant must 'at least make some plausible showing of how the witness's testimony would be both material and favorable to his defense.'" Id. (quoting United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982)). Colette spoke with one of the potential witnesses over the phone and determined that his evidence would not meet this standard. See Notice Filing Volume 3 Official Tr. p. 130, ECF No. 187. The Court finds that this investigation and decision fall within the wide latitude given to attorneys to exercise their professional judgment and does not represent a constitutionally deficient performance. Even if Colette had requested the writs and a continuance, it is

likely the court would have denied the request based on Colette's interpretation of the potential testimony. Therefore, the Court finds that Gavin has failed to meet the second requirement for a claim based on failure to call a witness.

As to the third requirement, Gavin has only produced speculative testimony in the form of his briefing. He does not have affidavits signed by Boswell or Webb as to what they would have testified to at trial. A defendant should "come[] forward with affidavits from those non-testifying witnesses attesting under oath as to . . . what they would have said at trial. . . ." Adams, 324 F. App'x at 350. The Court finds that this speculative testimony is insufficient to meet the third requirement.

As to the fourth requirement, the Court finds that Gavin has not shown that the evidence would be favorable to his defense. The description of Webb's potential testimony given in Gavin's briefing does not contradict Colette's interpretation of it as cumulative. The Court finds that it would only serve to impeach Cooper's testimony, an issue addressed infra. Further, as the Court understands from the briefing, the potential testimony of Boswell is that Cooper sent a signed Uniform Commercial Code ("UCC") form to Boswell's daughter to be filed with the state. Pl.'s Mem. Supp. p. 15, ECF No. 222. This evidence would not have aided Gavin's defense. The Court finds that Gavin has failed to meet the fourth requirement. Gavin has not meet three of the four Day requirements;

therefore, this claim is without merit.

### 4. Failure to Object at Trial and to Appeal the Alleged Late Disclosure of Brady Evidence

In his fourth claim, Gavin argues that Colette provided ineffective assistance of counsel by failing to object to and appeal the Government's late disclosure of Brady evidence, namely the identities of the potential witnesses, Samuel Boswell and Charles Webb. Pl.'s Mem. Supp. p. 16-17, ECF No. 222. Colette denies this claim as Gavin "re-urg[ing] basically the same alleged error" as the third claim. Aff. John M. Colette, ¶ 4, ECF No. 227. The remainder of Colette's denial is read as denying the existence of any Brady material, so there was nothing to object to or appeal. The Government makes the same argument in its brief. See Resp. p. 5, ECF No. 228 ("The government did not fail to disclose Brady material.").

In Brady v. Maryland, the Supreme Court held that government suppression of exculpatory, material evidence violates due process. 373 U.S. 83, 87 (1963). "There are three components of a true Brady violation: (1) the evidence at issue, whether exculpatory or impeaching, must be favorable to the accused; (2) that evidence must have been suppressed by the [prosecution], either willfully or inadvertently; and (3) prejudice must have ensued." Canales v. Stephens, — F.3d —, No. 12-70034, 2014 WL 4290612, at *16 (5th Cir. Aug. 29, 2014) (quoting Strickler v. Greene, 527 U.S. 263, 281-82 (1999)) (internal quotation marks omitted). Prejudice and

11

materiality are the same for purposes of a Brady analysis. Id.

The Court finds that the proposed evidence of Boswell does not meet the first component, that it be favorable to the accused, and, therefore, there was no Brady violation. Boswell's evidence that Cooper sent a UCC form to Boswell's daughter is at best neutral and ancillary information. It meets the second component for the same reasons as the evidence of Webb, discussed infra. It fails the third component because the absence of nonfavorable evidence cannot be prejudicial.

The Court finds, however, that the proposed evidence of Webb meets the first and second components. Colette refers to Webb's proposed testimony as impeachment evidence in his affidavit, and Gavin's description of what Webb would testify to comports with this interpretation. Further, the identities of these two witnesses were not disclosed until after trial had begun. Notice Filing Volume 1 Official Tr. ("Tr. Vol. 1") p. 254, ECF No. 185 ("THE COURT: How did you find [their names] out today? . . . MR. BALDRIDGE: In the rough notes of the agents that were provided to us this morning by the U.S. Attorney's Office.").[5]

As to the third component, the Court finds that Gavin was not prejudiced by the late disclosure of this information. "[T]here is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed

---

[5] Mr. Baldrige was co-counsel with Colette.

evidence would have produced a different verdict." Strickler, 527 U.S. at 281. "The proper inquiry is whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" Canales, — F.3d at —, 2014 WL 4290612, at *16 (quoting Strickler, 527 U.S. at 290). Colette describes Webb's testimony as "cumulative at best and not relevant at the worst" because Colette asserts that he had "impeached Cooper as well as anyone ever had been impeached."[6] Aff. John M. Colette ¶ 3, ECF No. 227. Having considered the transcript of the direct and cross-examinations of Cooper, the Court agrees that Webb's proposed testimony would be redundant. Gavin outlines four topics that Webb would be able to discuss to impeach Cooper: (1) knowledge that Cooper was attempting to set up Gavin in exchange for a reduction in his sentence, (2) whether Cooper prepared UCC forms, (3) whether Cooper did legal work for other inmates, and (4) the relationship between Cooper and McCullough. See Pl.'s Mem. Supp. p. 14, ECF No. 222. The Court finds that the first three of these topics were explored on both direct and on Colette's cross. The fourth topic was covered in the cross-examination by McCullough's attorney. Therefore, the Court holds

---

[6] Having reviewed the description of Webb's potential testimony contained in Gavin's briefing and the doubt cast on it by Colette's investigation, the Court will only view Webb's potential testimony as impeachment testimony. See Aff. John M. Colette ¶ 4, ECF No. 227. ("[Webb] told [Colette] over the phone, he did not hear what [Gavin] claims he did.").

that Webb's testimony would not have altered the outcome of the trial because the substance of it was put before the jury through examination of other witnesses. Finding no Brady violation, the Court holds it was not deficient performance for Colette not to object at trial. Therefore, this claim lacks merit.

5. Failure to Challenge Gavin's Career Offender Status

In his fifth claim, Gavin argues that Colette provided ineffective assistance of counsel by failing to object to an incorrect offense level determination. Gavin claims that his offense level as determined by the court was thirty-seven (37) when it should have been thirty-two (32).[7] Pl.'s Mem. Supp. p. 18. Colette argues that he did in fact object to the offense level during sentencing. Aff. John M. Colette ¶ 5&6, ECF No. 227. The Government states that Gavin's claim is not supported by the record. Resp. p. 5, ECF No. 228. Gavin's reply brief argues that the Government "ha[s] conceded this issue with its 'lackadaisical' response." Reply p. 23.

The Court finds that Colette did object to Gavin's status as a career offender during sentencing. See Notice Filing Official Tr. Sentencing ("Sent. Tr.") p. 10-11, ECF No. 193. Therefore, Gavin's fifth claim lacks merit.

6. Failure to Challenge Sentencing Enhancement

---

[7] In his reply brief Gavin argues that his offender level should have been seventeen (17) instead of thirty-two (32). Reply p. 23. The Court considers this to be a typographical error.

In his sixth claim, Gavin argues that Colette provided ineffective assistance of counsel by failing to object to a two level sentencing enhancement for Gavin's role as an organizer or leader in the offense. Pl.'s Mem. Supp. p. 18, ECF No. 222. Colette states that he did in fact object to the sentencing enhancement. Aff. John M. Colette ¶ 5&6, ECF No. 227. The Government similarly argues this claim is not supported by the record. Resp. p. 5, ECF No. 228. In his Reply, Gavin concedes that Colette did formally object to the enhancement but argues that Colette did not provide an argument in support of his objection to satisfy the Sixth Amendment burden. According to Gavin, Colette should have argued that Gavin played no leading or organizing role and that the enhancement is inapplicable to a defendant designated as a career offender. Reply p. 24-25.

As to Gavin's first contention, that Colette did not argue at sentencing that Gavin did not play an organizing or leading role in the offense, the Court finds that this is not supported by the record. See Sent. Tr. p. 6-10 (arguing that Cooper and the federal agents were the organizers and leaders in the offense rather than Gavin). As to Gavin's second contention, that Colette did not argue that the enhancement does not apply to a career offender, the Court finds that Colette did not make this argument during sentencing. Gavin argues that, after a defendant has been designated a career offender under U.S.S.G. § 4B1.1, the only sentencing enhancement

15

that can be applied is possession of a firearm under U.S.S.G. § 2D1.1(b)(1). Reply p. 25. However, Gavin cites no authority in support of this argument, and the Court can find none. Further, in United States v. Lomas, a court in the Middle District of Louisiana applied sentencing enhancements for a leadership role and possession of a firearm to a defendant designated as a career offender, negating Gavin's theory. See No. 06158, 2009 WL 1809907, at *4 (M.D. La. June 23, 2009) (acknowledging the district court's "upward adjustments for his possession of a firearm (and other offense characteristics, such as the amount of 'crack' attributable to him or his leadership role in the offenses)" at sentencing). Therefore, the Court finds that this claim is without merit.

## Conclusion

Having reviewed Gavin's six alleged instances of ineffective assistance of counsel, the Court finds that all are without merit. In the first, third, and fourth claims, the Court finds that Attorney Colette gave Gavin a constitutionally sufficient performance. In the second claim, the Court finds that Gavin failed to prove prejudice by the absence of his testimony. In the fifth and sixth claims, the Court finds that Gavin's arguments are unsupported by the record in this case. Therefore, Gavin's motion to vacate, set aside, or correct sentence will be denied.

## Order

IT IS HEREBY ORDERED that the Defendant's Motion to Vacate,

Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 is DENIED.

SO ORDERED this the 16th day of October 2014.

                                          /s/ David Bramlette
                                          UNITED STATES DISTRICT JUDGE